IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
Alexandria, Virginia

| | |
|---|---|
| **Miguel Gonzalez,** *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 1:06cv204 |
| ) | |
| **McNeil Technologies, Inc.,** *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**MEMORANDUM OPINION**

This case is under advisement following a trial held pursuant to the stipulation entered on November 30, 2006. The issues have now been fully briefed and argued. For the following reasons, the court finds defendants liable for unpaid overtime and liquidated damages in the amounts detailed in this memorandum opinion, which constitutes the court's findings of fact and conclusions of law.

**PROCEDURAL SUMMARY**

This case originated with a complaint against defendants filed by Miguel Gonzalez on February 24, 2006. The Gonzalez lawsuit was consolidated with six other lawsuits filed in this district against defendants. The named defendants in the consolidated suit are McNeil Technologies, Inc., McNeil Security, Inc., James McNeil (principal owner of corporate defendants) and Ronald Thomas (CEO of McNeil Technologies). All the suits alleged, *inter alia*, that defendants, as employer of plaintiff employees, had failed to pay proper overtime under the relevant provisions of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"). Notice was sent to similarly situated employees, and several dozen consented to become party

plaintiffs in the lead suit, so that at its peak the case involved 70 plaintiffs. The majority of plaintiffs have settled. As trial approached, there were six plaintiffs remaining in the case.

The parties entered into a stipulation on November 30, 2006 (docket no. 163). The stipulation consented to the jurisdiction of a magistrate judge and provided that all claims by individual plaintiffs that had not been resolved by the parties as of December 6, 2006 would be decided by the magistrate judge. The parties further stipulated that defendants are liable for all unpaid overtime and that there was no dispute as to the amount of overtime worked for some plaintiffs. The stipulation included the following relevant conditions: 1) the period to be considered as to the determination of unpaid overtime shall be February 2003 through June 2006; 2) any amount of overtime found to be due to any plaintiff shall be increased by 100% liquidated damages, and any amount paid to a plaintiff in May 2006 shall be an offset to the amount owed after liquidated damages are added to the unpaid overtime; 3) the court shall award, pursuant to 29 U.S.C. § 216(b), attorneys' fees and costs as previously agreed by the parties for the period through November 28, 2006 and an additional amount as determined by the court for services and costs after that date.

On January 16, 2007, the court conducted a bench trial[1] for the remaining plaintiffs on the remaining issues. Plaintiffs offered testimony from each of the remaining plaintiffs as well as former lead plaintiff Gonzalez. Defendants offered the testimony of Ronald Thomas, one of the named defendants and the CEO of McNeil Technologies.

---

[1]Though the hearing has at times been referred to by the parties and the court as an evidentiary hearing, the proceeding was in fact a trial, as it represented the final "formal judicial examination of evidence and determination of legal claims in an adversary proceeding." BLACK'S LAW DICTIONARY 1543 (8th ed. 2004). The fact that much of the evidence was stipulated does not change the proceeding's essential nature.

Subsequent to the trial, the parties advised the court that two more plaintiffs had settled. The remaining claims by plaintiffs Michael Brock, Floyd Dortch, Evelyn Washington and Donita Manley are now ripe for decision.

## SUMMARY OF ISSUES

The trial revealed three issues that require resolution: 1) determination of the correct calculations of the amount of money owed to plaintiffs for the uncompensated overtime they worked; 2) whether bonus payments received by plaintiffs should be included in their regular rate of pay for purposes of those calculations; and 3) whether plaintiff Manley is entitled to compensation for overtime she did not report on her time sheet.

Plaintiffs Dortch, Brock, and Washington are in essentially the same situation. Defendants do not dispute that these plaintiffs are owed some amount of overtime pay or the amount of overtime worked, but the parties have not been able to agree on a dollar figure.

First, the parties cannot agree on the basic calculations of how much each plaintiff was paid and how much they should have been paid in overtime. The calculations have been complicated for at least two reasons: (a) these plaintiffs were paid different rates during the same week depending on different jobs they performed; and (b) defendants apparently paid these plaintiffs less than the amount they were owed under the law but more than they were owed if paid pure straight time, so a "credit" has had to be calculated to derive the correct amount of overtime pay that is now owed.

Second, these plaintiffs contend that bonuses they received should be included in their regular rate of pay, which in turn leads to a higher overtime rate and additional liquidated damages. Defendants argue that the bonuses were purely discretionary and should be excluded from the regular rate of pay under 29 U.S.C. § 207(e)(3).

3

Third, the other remaining plaintiff, Donita Manley, offered evidence that during part of her employment by defendants she worked ten hours per day but only reported eight hours per day on her time sheet. She now seeks to recover compensation for that extra time. Defendants argue she did not work this extra time and in any event is not entitled to payment for this time given her failure to report it.

## ANALYSIS

**A. Bonuses**

The FLSA requires overtime compensation to be paid at a rate not less than one and one half times the "regular rate" at which the employee is employed. *See* 29 U.S.C.A. § 207(a)(1). Thus, computation of the "regular rate" is the first step in a determination of overtime pay. *Masters v. Maryland Management Co.*, 493 F.2d 1329, 1332 (4th Cir. 1974).

The presumption is that monies paid to employees are included in calculating regular rates of pay. *See* 29 U.S.C. § 207(e) (the regular rate of pay "shall be deemed to include *all* remuneration for employment paid to . . . the employee") (emphasis added). Defendants argue that the bonuses paid to plaintiffs should not be included because they fall within the exception delineated in 29 U.S.C. § 207(e)(3). That section reads in relevant part:

> (e) . . . As used in this section the "regular rate" at which an employee is employed shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee, but shall not be deemed to include–
>
> > (3) Sums paid in recognition of services performed during a given period if either, (a) both the fact that payment is to be made and the amount of the payment are determined at the sole discretion of the employer at or near the end of the period and not pursuant to any prior contract, agreement, or promise causing the employee to expect such payments regularly . . .

Exceptions to the regular rate are to be interpreted narrowly against the employer. *See Mitchell v. Kentucky Fin. Co.*, 359 U.S. 290, 295-96 (1959).

The burden is on the employer to overcome the presumption and prove that some amount falls within one of the exceptions in § 207(e).  *See Idaho Sheet Metal Works, Inc. v. Wirtz*, 383 U.S. 190, 209 (1966) (under the FLSA, "the burden of proof respecting exemptions is upon the company"); *O'Brien v. Town of Agawan*, 350 F.3d 279, 294 (1st Cir. 2003) (applying *Wirtz* holding to § 207(e)).

The court finds that defendants have not carried this burden and that the bonuses therefore should be included in plaintiffs' regular rates of pay.

Defendants focus on testimony from plaintiffs Brock and Washington, as well as Mr. Gonzalez, in which each of them said or acknowledged that he or she believed bonuses were granted at the discretion of defendants, particularly defendant Thomas (Trial Transcript ("TT") 87, 56, 28).  They also testified that in some instances they did not know or expect a specific amount of bonus in a given year.  Defendant Thomas testified that bonuses were given out on the basis of recommendations he received from project managers, that the distribution and amount of bonuses was his decision along with other managers, and that no employee had a "right" to a bonus (TT 90-92).

Defendants also rely on their corporate bonus policy, which reads "The decision whether to award a qualifying eligible employee any incentive compensation or an award . . . shall always be at the discretion of the corporate management and shall be directly influenced by such factors as the extent to which overall objectives are achieved and the financial condition of the company" (TT 29).

Plaintiffs offered evidence that they had been told they would receive the bonuses and that bonuses were in fact paid pursuant to those assurances.  Mr. Gonzalez testified, "The bonuses were explained to me [by defendant Thomas] that the better the contract does during the

year, the bigger and better bonuses would be at the end of the year" (TT 24).  Plaintiff Washington testified that each year she was told in October whether she would receive a bonus around Christmas (TT 54).  She was told that receipt of the bonus was based on the amount of hours she worked and good attendance (TT 54).[2]

Plaintiff Dortch testified that he and Mr. Thomas sat down and devised a formula through which his bonus would be calculated and that he received bonuses in accordance with that formula (TT 81-85).  Defendant Thomas confirmed this discussion (TT 100-101).  Plaintiff Brock testified that Mr. Thomas promised him that the would receive a $10,000 bonus if he carried a contract through the fiscal year and was promised other percentage bonuses based on certain incentives (TT 88-90).  Finally, Mr. Thomas himself, in explaining that no employee has a "right" to a bonus, testified that "we have always been clear that McNeil is a performance based organization [a]nd that as individuals, you have an opportunity to earn bonuses, but these bonuses are subject to the discretionary decision-making authority of corporate management" (TT 92).

Defendants have demonstrated that the amount and distribution of bonuses was variable among employees and that plaintiffs did not have an enforceable "right" to any given bonus.  However, the crux of the question whether a bonus falls within the § 207(e)(3) exception is whether it has been promised to the employee, even if that promise is attended by certain conditions and the employee understands that a bonus might not be paid.  Department of Labor interpretive guideline 29 C.F.R. § 778.211 (emphasis added), titled "Discretionary Bonuses", says that "the employer must retain discretion both as to the fact of payment and as to the amount

---

[2]Sec. 207(e)(1) dictates that Christmas bonuses may be excluded, but only when the "amounts of [the bonuses] are not measured by or dependent on hours worked, production, or efficiency."

until a time quite close to the end of the period for which the bonus is paid . . . *If the employer promises in advance to pay a bonus, he has abandoned his discretion with regard to it.*"[3] This guideline is entitled to respect to the extent it is persuasive. *See Christensen v. Harris*, 529 U.S. 576 (2000).[4]

In the circumstances presented here, the court finds the guideline persuasive and weighing in plaintiffs' favor. The clear thrust of § 207 is that once a bonus is promised to an employee as an inducement to achieve some business goal, even if that promise is not a guarantee of payment but contingent on other factors such as the financial state of the company, it is to be included in the regular rate of pay if and when it is actually paid.

The case law comports with this reading of the statute and guideline. The court in *McLaughlin v. McGee Bros. Co., Inc.*, 681 F.Supp 1117, 1133-34 (W.D.N.C. 1988) summarized the state of the law in this way:

> [I]ncentive-type bonuses . . . given pursuant to an agreement or understanding as a reward for specific employee behavior . . . must be included in the regular rate. *Jacksonville Paper Co. v. McComb*, 167 F.2d 448 (5th Cir. 1948), *rev'd on other grounds*, 336 U.S. 187 (1949). Any bonus which . . . employees are apprised of upon hiring cannot be excluded. 29 C.F.R. § 778.211©; *Walling v. Garlock Packing Co.*, 159 F.2d 44 (2d Cir.1947), *cert. denied*, 331 U.S. 820 (1947). It follows that in determining the regular

---

[3]The guideline goes on, "Thus, if an employer announces to his employees in January that he intends to pay them a bonus in June, he has thereby abandoned his discretion regarding the fact of payment by promising a bonus to his employees . . . Similarly, an employer who promises to sales employees that they will receive a monthly bonus computed on the basis of allocating 1 cent for each item sold whenever, is his discretion, the financial condition of the firm warrants such payments, has abandoned discretion with regard to the amount of the bonus though not with regard to the fact of payment. Such a bonus would not be excluded from the regular rate." 29 C.F.R. § 778.211.

[4]An agency guideline's persuasiveness "will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Skidmore v. Swift*, 323 U.S. 134, 140 (1944); *see Madison v. Resources for Human Development*, 233 F.3d 175, 185-87 (3rd Cir. 2000) (applying *Skidmore* language to 29 C.F.R. § 778).

rate of pay, a bonus which in fact constitutes part of an employee's compensation, rather than a true gratuity, must be included, even if such bonuses are not determined or paid until some time after the regular payday. *Walling v. Harnischfeger Corp.*, 325 U.S. 427 (1945). The Supreme Court holds that among the groups of nonexcludable bonuses are those which . . . are announced to employees to induce them to work more steadily, more rapidly, more efficiently, or to remain with the business. *Walling v. Younger-Reynolds Co.*, 325 U.S. 419 (1945) (some citations omitted).

The evidence here confirms that defendants offered their employees bonuses as an inducement to achieve certain goals beneficial to them as employer. It was part of defendants' employment policy to make employees aware that performance-based bonuses were available, and the extensive internal guidelines produced by defendants to govern the bonus program reveal that bonuses were an important part of their chosen wage structure. Defendants' practice of conditioning receipt of those bonuses on the financial well-being of the company as a whole and other factors does not transform them into "discretionary" bonuses as that word is to be understood in the context of the statute.

Taking into account the agency guideline and case law, as well as the baseline rule that exceptions are to be construed narrowly against the employer, the court finds that the bonuses are properly included in the regular rates of pay of plaintiffs Brock, Dortch, and Washington.

**B. Unreported Overtime**

The FLSA, 29 U.S.C. § 207(a)(1), obligates covered employers to pay their employees time and a half compensation for work in excess of forty hours in a workweek. In order to recover in an action brought under that provision, an employee must prove that she worked overtime hours without compensation, and she must show the amount and extent of her overtime work as a matter of just and reasonable inference. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946). Plaintiff Manley (hereinafter in this section "plaintiff") testified that from

2002 until the beginning of 2004, she worked as a mail processor from 6:00 a.m. to 4:00 p.m. five days a week, without a lunch break or any other relief during that time (TT 57-59).

It is undisputed that during this time she only reported eight hours per day on her time sheet and was only paid for eight hours per day. It is also undisputed that she would have been entitled to time and a half pay for these hours had she reported them. The issues become whether she worked the time now claimed and, if so, whether she is barred from recovering for that time now having failed to report it.

As an initial matter, the court finds that plaintiff testified truthfully and did work ten hours a day during a two year period from 2002 to 2004. Defendants argue that her testimony is not credible because no one would work ten additional hours each week for years without pay and not complain about it. Plaintiff did alert her direct supervisor, Mr. Gonzalez, of the extra hours, but testified that she did not voice her complaints to anyone else other than a co-worker. She testified that Mr. Gonzalez told her that there was "nothing he could do about it" (TT 58), which Mr. Gonzalez confirmed. Defendant also argues that a person who would submit a false time sheet is also a person who would testify falsely in court. The court is satisfied that given the circumstances established by the evidence, plaintiff continued to work extra hours under the reasonable belief that complaining would be fruitless and potentially detrimental to her continued employment.[5]

---

[5] Mr. Gonzalez confirmed that plaintiff went without a lunch break, but testified that she worked from 7:00 a.m. to 4:00 p.m. While this would still entitle her to overtime, it is less than her testimony of ten hours per day. However, defendants offered no evidence that she did not work ten hours, other than incredulity that she would have failed to report it. Mr. Gonzalez corroborated plaintiff's testimony that she was working more than eight hours, and the court credits her testimony as an accurate recollection of the hours she worked.

Defendants have also denied being aware that the extra hours were being worked (TT 108) and argue that this protects them from liability.  In order to show that she was "employed" within the meaning of the FLSA, and thus entitled to overtime pay, plaintiff must prove that her employer had actual or constructive knowledge of the overtime work.  *See Davis v. Food Lion*, 792 F.2d 1274, 1277-78 (4th Cir. 1986).  In *Davis*, the Fourth Circuit upheld a district court's finding that an employer did not have constructive knowledge of an employee's overtime hours where the employee had "deliberately acted in such a way to prevent his employer from acquiring knowledge of his alleged uncompensated hours."  *Id*.

Defendants point to the clear policy they had in place which directed employees to report all hours worked on their time sheets.  (TT 95-96).  Defendants cite to cases which have held that an employee who failed to report hours on his or her time sheet is estopped from claiming that the failure of the employer to pay overtime on those hours is a violation of the FLSA.  *See Brumbelow v. Quality Mills, Inc.*, 462 F.2d 1324, 1327 (5th Cir. 1972); *Newton v. City of Henderson*, 47 F.3d 746, 749 (5th Cir. 1995).

The court finds that defendants should have known that plaintiff was working overtime and are liable for unpaid overtime for those hours.  Plaintiff is entitled to the full ten hours credit per day, as she testified that while she was given an opportunity to get lunch, she was required to immediately return to her desk and that the office received business during the time she had to eat.  *See Mumbower v. Callicot*, 526 F.2d 1183, 1187-88 (8th Cir. 1975) (requiring that the time during which employee was required to work during her lunch period at an answering service, without relief, be included in overtime determination).

First, defendant Thomas's contention that he had no indication that plaintiff was working these hours was at least partially contradicted by Mr. Gonzalez.  Mr. Gonzalez testified that he

told defendant Thomas that the office in which plaintiff worked was short-staffed and employees were working more than eight hours (TT 33), though he later testified that he never told anyone specifically about plaintiff working an extra hour a day (TT 37).  Mr. Gonzalez testified that when he began supervising the office, which was prior to plaintiff working in the mail processor position, the practice was for the mail processor to work extra time and not be paid for it (TT 23). When he voiced his concern that the office was understaffed, he was directed to find employees who would work for straight time (TT 34).  Mr. Thomas on the other hand testified that he never discussed staff shortages with Mr. Gonzalez, and that he did not know that plaintiff was an employee of defendants until this lawsuit (TT 95).

      Second, even if it is true that defendants did not have direct personal knowledge that plaintiff was working two extra hours a day, the more appropriate lens through which to view this situation is the general responsibility the law places on employers to prevent unwanted overtime from being worked.  *See Forrester v. Roth's I.G.A. Foodliner, Inc.,* 646 F.2d. 413, 414 (9th Cir. 1981).  As a matter of course, a company is responsible for knowing the hours of operation for its offices and the staffing needs to fill those hours.  Plaintiff testified that her office was open from 6:00 to 4:00 and accepted business that entire time, and that she was required to work those ten hours as the office's sole employee.  *See Holzapfel v. Town of Newburgh, N.Y.*, 145 F.3d 516, 524-25 (2nd Cir. 1998) (constructive knowledge of overtime hours imputed to employer where plaintiff's job required the task that took up the overtime hours and plaintiff had not been prohibited from working the extra time).

      It follows that "[a]n employer who is armed with this knowledge cannot stand idly by and allow an employee to perform overtime work without proper compensation, even if the employee does not make a claim for the overtime compensation." *Forrester*, 646 F.2d at 414.  "The

11

employer bears the burden of preventing overtime work when such work is not desired." *Truslow v. Spotsylvania County Sheriff*, 783 F.Supp. 274, 276 (E.D. Va. 1992), *citing* 29 C.F.R. § 785.13 ("In all cases it is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them").

Of course, employees also bear a responsibility to report time accurately and refrain from working hours they have been directed not to work. However, this case is not a situation, such as *Newton*, where plaintiff was working outside an office or in some other capacity where hours were difficult to monitor and thus subject to manipulation. *See* 47 F.3d at 779 (employee police officer estopped from claiming uncompensated overtime that he failed to report, where he had specifically been denied overtime requests and it was reasonable for employer to assume he was using "flex time" to compensate for overtime worked); *see also Brumbelow*, 462 F.2d at 1327 (employee who worked alone in her home and worked extra hours to meet production goals was estopped from claiming pay for hours she failed to report where there was "no evidence that [the employer] knew or should have known that [plaintiff] was giving false information to conceal that fact in order to hold on to her job").

Nor is this a situation, such as *Davis*, where plaintiff was working "secret," off-the-clock hours after being told repeatedly not do so. *See* 792 F.2d at 1275-76. Plaintiff did not deliberately mislead or prevent her employer from discovering these hours were being worked; her direct supervisor was aware of the hours and told her that any appeal by him to higher management would be futile. The fact that the defendants did not personally observe plaintiff working ten hours everyday does not absolve them their duty to pay proper wages to an employee for work which they "suffer[ed] or permitt[ed]." 29 U.S.C. § 203(g).

### C. Overtime Calculations

Finally, the court finds that plaintiffs' calculations of overtime owed comply with the relevant law and are correct. It is worth reiterating that the only dispute is about how to calculate the amount of overtime owed and at what pay levels; the parties stipulated that overtime went uncompensated and the amount of overtime hours worked. The court finds that plaintiffs Brock, Dortch, and Washington each worked the number of hours of overtime agreed to by the parties and are entitled to time and half plus 100% liquidated damages for those hours.

Before the trial, the court requested that each side prepare calculations of the overtime owed to those plaintiffs for whom it was conceded some amount was owed. Despite claiming to rely on the same time sheets and pay records, the parties produced widely divergent figures, even setting aside the bonus issue. *See* Memorandum on Damages by all Plaintiffs (docket no. 165); Reply Memorandum Regarding Final Calculations to Plaintiffs' Memorandum on Damages (docket no. 166); Plaintiffs' Reply to Defendants' Memorandum on Damages (docket no. 167). At the trial, plaintiffs' counsel represented that he had made some adjustments to his calculations and offered exhibits detailing the new figures, but argued that defendants' method of calculation is flawed because it is not based on the workweek concept and because it does not correctly categorize the different pay rates for plaintiffs. Defendants countered that their calculations are correct and expressed uncertainty as to why the figures were coming out differently.

In post-trial briefing, plaintiffs averred that they had used the proper "workweek concept" pursuant to 29 U.S.C. § 207(a) and 29 C.F.R. § 778.104, which states that the FLSA does not permit averaging of hours over two or more weeks. *See* Plaintiffs' Post-Hearing Brief (docket no. 170). Because plaintiffs Dortch, Brock, and Washington were paid different amounts during a single workweek, plaintiffs used the "weighted average" method of calculating the appropriate

overtime rate, as described in 29 C.F.R. § 778.115.[6]  Plaintiffs further contended that they had correctly identified the different rates paid to the employees in a given week and derived the correct overtime owing pursuant to those rates.

Defendants argued that plaintiffs' initial calculations provided "no explanation for the results shown," were "based on estimates," and included "serious mathematical errors," and that the revised calculations included in the post-trial brief were similarly unreliable.  *See* Defendants' Post-Hearing Brief (docket no. 171).  Defendants again urged the court to adopt their overtime numbers.  In response, plaintiffs correctly pointed out that defendants had not identified any examples of these alleged errors in plaintiffs' calculations.  *See* Plaintiffs' Reply to Defendants' Post-Hearing Brief (docket no. 172).

Based on the representations made by plaintiffs' counsel at the trial, examination of the exhibits entered at that time, the argument and explanation included in Plaintiffs' Reply to Defendants' Memorandum on Damages (docket no. 167), the court's understanding of the proper calculation method, the court's review of the records, and the failure of defendant to identify specific flaws in plaintiffs' calculations, the court finds that the figures provided by plaintiffs are correct and the proper basis for awards of unpaid overtime and liquidated damages.

---

[6]"Where an employee in a single workweek works at two or more different types of work for which different nonovertime rates of pay (of not less than the applicable minimum wage) have been established, his regular rate for that week is the weighted average of such rates. That is, his total earnings (except statutory exclusions) are computed to include his compensation during the workweek from all such rates, and are then divided by the total number of hours worked at all jobs."

**CONCLUSION**

Based on the foregoing analysis and findings, the court finds that plaintiffs are entitled to damages as follows:

|  | Unpaid Overtime (hours worked) | Unpaid Overtime (bonuses) | Liquidated Damages | Total |
|---|---|---|---|---|
| Floyd Dortch | $19,500.00 | $20,104.27 | $39,604.27 | $79,208.54 |
| Michael Brock | $13,557.60 | $6,557.43 | $20,114.43 | $40,228.86 |
| Evelyn Washington | $7,395.54 | $3,516.01 | $1,0911.55 | $21,823.10 |
| Donita Manley | $5,325.72 | N/A | $5,325.72 | $10,651.44 |

Pursuant to the stipulation entered into by the parties, plaintiffs are entitled to an award of attorneys' fees and costs. Plaintiffs' counsel is directed to submit an affidavit detailing fees and costs within 21 days. Defendants shall file and serve any response within eleven days thereafter. The court will then make additional findings and enter a judgment.

/s/
Thomas Rawles Jones, Jr.
United States Magistrate Judge

April 11, 2007
Alexandria, Virginia

15